Thank you, and may it please the Court, Deepak Gupta for the Plaintiffs. Texas's no-surcharge statute, like the Florida statute recently struck down by the Eleventh Circuit, regulates speech and nothing else. The state has not carried its burden to defend that regulation of speech, and the law is unconstitutionally vague to boot. But before explaining why I think the Eleventh Circuit got it right, and why I think the I'd like to turn to the questions posed by this Court in the letter to counsel a few weeks ago. JUSTICE KENNEDY Let me just ask you, if the statute prohibited dual pricing, then there's no constitutional, no First Amendment problem, is there? DEEPAK GUPTA We would not be here, that's right. JUSTICE KENNEDY That's right, that's right. DEEPAK GUPTA Now, there would be a constitutional problem that the state acknowledges at page 27, footnote 9 of its brief, and that's there would be a federal preemption problem, because the federal statute enacted back in the 80s reflects a federal policy of allowing merchants to provide discounts for cash. And so the state statute is enacted against the backdrop of that federal statute. JUSTICE KENNEDY That's not before us today, as I understand it. DEEPAK GUPTA The federal statute isn't before you, right? But I think if you're asking the question that you asked in the letter to counsel, which is should we consider an alternative construction of the statute, an alternative construction, by the way, that hasn't been proposed by either of the parties and hasn't been the settled understanding of these statutes, I think it is relevant that that interpretation would take you out of the fryer and into the frying pan, as it were. It would take you out of the First Amendment problem, but straight into what both parties acknowledge is a potential preemption problem. JUSTICE KENNEDY That may be the next case, but that's not raised in this case. DEEPAK GUPTA Well, I mean, it is if you're considering a constitutional avoidance doctrine. It would be an exceedingly odd constitutional avoidance interpretation that runs right into another constitutional problem. And let me suggest that the standard, the parties haven't had a chance to brief any of this. JUSTICE KENNEDY Well, we posed the question to you. DEEPAK GUPTA Right. And let me suggest the standard that I think should guide your consideration of this question that comes from the Supreme Court's decision in City of Houston v. Hill, that's 482 U.S. 451. And there the Court said, if the statute is not obviously susceptible of a limiting construction, then even if the statute has never been interpreted by a State Tribunal, it is the duty of the Federal Court to exercise its properly invoked jurisdiction. And that's a useful case for a number of reasons. That case deals with a First Amendment challenge. It explains why Pullman abstention is strongly disfavored in First Amendment cases. It's also a challenge that came from this Court en banc, in which this Court explained that in cases involving State statutes, for Federalism reasons, this Court should actually be very careful about rewriting State statutes in the name of constitutional avoidance.  JUSTICE KENNEDY I'm not talking about rewriting. I'm talking about if there's a reasonable interpretation that this statute prohibits dual pricing. I'm not talking about rewriting a statute. Basically, I would—let me suggest to you that Black's Law Dictionary gives a definition of surcharge as, quote, an additional tax charge or cost. Now, if we apply that plain meaning as taken right out of Black's Law Dictionary, why doesn't this statute prohibit dual pricing?  CLEMENT Because the statute has to be interpreted against the backdrop of the Federal statute that it was designed to replace a Federal ban, and it was enacted against the backdrop of a Federal statute that reflected a strong Federal policy of allowing merchants to provide cash discounts. It's got to be interpreted against the settled understanding that the State has had throughout this statute. And this statute was enacted at the same time as many State statutes around the country. And nobody disputes that they were all intended to do the same thing. Now, some of those State statutes actually included specific language that said a merchant may provide a cash discount. Now, unfortunately, the Texas drafters didn't include that particular language, but I think the States can agree with me when they get up. If you look at their brief, pages 4, 5, and 6, they quote the sponsor of the Texas statute. He certainly understood that he was allowing cash discounts while prohibiting surcharges. That's the way the OCCC, which has authoritative, the authority to construe this statute, has always interpreted it. And you can look at record of the record at page 258 to see the State's interpretation. So the problem is here, this is a sort of a solution in search of a problem. First of all, it wouldn't be a narrowing construction in the field. JUSTICE KENNEDY On the Eleventh Circuit, both the majority and the dissent suggested that the plain meaning of the statute, without that additional clause, simply meant what Black's Law Dictionary said it did. MR. WARREN Well, the Eleventh Circuit had the benefit of a statute. I mean, I'll grant to you it was easier there, right, because you had the language. JUSTICE KENNEDY Well, I mean, they said the majority started off by saying at first blush this looks like it would prohibit both discounts and an additional charge. MR. WARREN Right, but the Florida statute had language that said— JUSTICE KENNEDY That was the difference in these two statutes. MR. WARREN I see, you know, the temptation to seize on that difference between the Texas statute and the other statutes. JUSTICE KENNEDY I don't know that anybody's seizing on anything. We're trying to interpret the statute as best we can.  WARREN Right, right. JUSTICE KENNEDY And let me just say this, we're not bound by the party's interpretation of a statute. MR. WARREN I think that's absolutely right, Your Honor, but I think if you're considering an interpretation that, you know, the statute has been on the books since the 1980s, nobody has had that interpretation. The State hasn't had that interpretation. JUSTICE KENNEDY Well, the Eleventh Circuit did. The Eleventh Circuit said without that additional charge, this would be the meaning. MR. WARREN I don't think that's a fair reading of the Eleventh Circuit's decision. JUSTICE KENNEDY Well, let me disagree about that then. MR. WARREN The Eleventh Circuit also understood the federal backdrop. And let me just say, this would not be a narrowing construction, Judge Davis. It would be a broadening construction, which is an exceedingly odd thing, right? You would be making the statute cover more things than the statute currently covers. So that's odd. JUSTICE KENNEDY Interpreting the statute according to the definition in Black's Law Dictionary. MR. WARREN And you would be running right into a preemption problem. JUSTICE KENNEDY All right, maybe so, but I'm talking about now the issue of whether this statute violates the First Amendment. MR. WARREN I don't think you can simply say that's the next case. I mean, I think if one is considering a, you know, construing a statute against the meaning that everyone has thought it has, and that runs you right into another constitutional problem, it seems to me that that is a relevant consideration. And the Supreme Court's constitutional avoidance case law makes that clear. The standard I read you earlier from Hill says, you know, only if you have, the statute is not obviously susceptible to a limiting construction that avoids constitutional problems. So I hope, you know, I've persuaded you that there's at least something exceedingly odd about interpreting the statute in a way that nobody has thought it means, and it actually broadens the construction of the statute. The Court also had— JUSTICE KENNEDY What is your basis for urging that this would cause a preemption problem in the light of the fact that Congress allowed that law to lapse?  WARREN Well, let me be clear, Judge Barksdale, there's sort of two laws at issue. It's true, of course, Congress allowed the surcharge ban to lapse. But what that left in place was the original provision, it's 15 U.S.C. 61666F, and that statute allows merchants to provide cash discounts to customers. And so if you were to read the Texas statute in a way that nobody is urging, which to ban all dual pricing, you'd run headlong into the federal statute. The federal law would be giving merchants a right, and you would be reading Texas law to foreclose that right. It would be pretty close to impossibility preemption, as Justice Thomas puts it. It would be purposes and objectives preemption. And I'd be happy to brief this. I mean, I think if the Court is seriously— JUSTICE KENNEDY I understand that given the State's argument, you wouldn't have briefed it. WARREN That's right. I mean, both the State—I think I agree, unless the State is changing its position today, I think the State, we agree with the State and all the other States that have defended these statutes. And the State actually, as I mentioned, notes the preemption problem at page 27, footnote 9 of their brief. And I also think, you know, I want to make sure that I address the Court's questions about Pullman abstention, because I think what the Court, what that letter was suggesting at least is the possibility that you could read this statute a certain way, or at least the possibility of that could lead to Pullman abstention. And I want to be really clear, the Hill case also makes clear that Pullman abstention is disfavored in First Amendment cases. And here's a quotation. This is from Domprowski v. Pfister, which is cited in Hill, quote, "'Abstention is inappropriate where statutes are justifiably attacked as a bridging free expression.'" So the Court has been very clear that it is backing away from Pullman abstention in general, but it has always been clear that Pullman abstention is inappropriate in First Amendment cases. And in Arizonans v. Official English, the Supreme Court referred to Pullman abstention in the past tense as a relic, and said that if you've got—and this wasn't a First Amendment abstaining, the right thing to do is to certify to the state courts. And the reason for that is because Pullman abstention proved to be a process that resulted in a lot of delay. What it essentially says is you've invoked the jurisdiction of the federal courts, we actually do have jurisdiction, we're not going to hear your case, we're going to send you back to state court, you're going to have to start in the state trial court and work your way up to the state Supreme Court. That is a very costly, expensive, delaying process, and it is particularly a bad idea in First Amendment cases where there's a chilling effect. My clients right now cannot engage in the speech they would like to engage in because of the existence of this law and because they are concerned that they can't engage in dual pricing and confidently instruct their employees that they won't run afoul of the law in the way that the gas station in New York in the Fulvio case, the first reported prosecution, that was a situation in which the gas station owner was trying to do the right thing, had a posted cash price, had a posted credit card price, but an employee made the mistake of telling a customer that it cost five cents more to pay for gas with a credit card and five cents less to pay with cash, rather than five cents less to pay with cash, and that simple slip of the tongue resulted in liability under the surcharge statute, and I think that's why the Eleventh Circuit says on the first page of its opinion, it's intolerable to have a statutory scheme where a simple slip of the tongue by a merchant results in liability. This is, you know, it's an exceedingly odd statute, I'll grant you that. It is a statute, as the Eleventh Circuit says, that effectively distinguishes between a glass half full and a glass half empty. It says that the same objective economic reality is either illegal or legal, depending entirely on how it's described to the consumer. And as — But that's the Florida statute that has the two clauses instead of the Texas statute that has the one. Well, some of the — there are ten statutes around the country. They were all enacted — You're talking about the Texas statute. Right. They were all enacted at the same time. Some of them have this language about discounts, some of them do not, but they have all been interpreted uniformly, and I can't find — I've looked, I haven't found any suggestion from any of these statutes that anyone has ever interpreted them as a ban on dual pricing. That's not how the state has enforced the law. The state has sent out cease-and-desist letters that reflect this understanding, that the statute permits cash discounts and prohibits credit card surcharges. And if you look at the state's authoritative interpretation of the statute, rests on that, because the state is concerned that it does — it wants to be faithful to the law as it was enacted, as it was intended, and as it was enacted against the backdrop of the federal policy that permits cash discounts. So I think, you know, constitutional avoidance is about the court having some restraint and about being careful. Of course you want to be careful before you strike down a state statute, but this would be the odd case in which engaging in an alternative construction would actually be sort of the opposite of that. You'd be broadening the statute, you'd be giving the statute a meaning that nobody has intended, and you'd cover all sorts of conduct that federal law gives merchants the right to engage in. So that would be, I think, an exceedingly odd use of constitutional avoidance. I would agree that it would be fairer if you had the — if you read the statute the way I suggest, so that you don't — you don't differentiate between cash discount and a additional charge. Right. But what you would be saying then, Judge Davis, is that the statute just bans any kind of dual pricing, right? It takes away the very right that federal law conferred in 15 U.S.C. 1666-F. You can't penalize a credit card holder either way, either with a cash discount or an added charge. Right. And that would be utterly inconsistent with the statute as it was intended. You can look at the sponsor's statement quoted in the state's brief. As the state has always understood it, it's utterly inconsistent with the state's brief, the way the merchants and the regulated community have understood this statute since the 1980s. And we live in a national economy. So you would make Texas the only state in the union that suddenly has a policy that's contrary to what's been on the books under federal law since the 1980s. That would be a big problem for merchants. And, you know, I think then we'd have to go to the Texas Supreme Court, and I'm fairly confident the Texas Supreme Court would say that interpretation is wrong. That seems like an odd way to do constitutional adjudication. Well, I'm just going to suggest to you that if that last clause hadn't been in the Florida statute, the Eleventh Circuit would have gone that way, the way I read the opinion. So I don't think it's something brand new. Right. I mean, I think, you know, we haven't had the chance to brief any of these topics, the alternative construction, Pullman abstention, constitutional avoidance. I think if the court would permit us to provide some constitutional briefing, I think some supplemental briefing, I think the court would benefit from that, because these are tricky issues and they do turn on the history of these statutes and the way they've always been interpreted. And I think these are weighty questions. And so — We'll consider that. Let's hear the state. Thank you. May it please the court. The anti-surcharge law restricts sellers from charging additional fees when customers buy goods or services with a credit card instead of cash. Now, the district court rightly concluded that the law regulates economic conduct in simple and straightforward terms, and the Second Circuit reached a similar conclusion, rejecting the very arguments that the plaintiffs raise here. The court should affirm the judgment dismissing both the First Amendment and vagueness claims. I'd like to just highlight a few points, and then I'm happy to address the issues that the court asked us to address by letter. To begin with, everyone agrees that pricing regulations themselves do not implicate the First Amendment. And although the speech clause protects sellers' ability to communicate and advertise truthful information about lawful prices, it does not restrict the state's ability to regulate the underlying pricing conduct itself. And the anti-surcharge law here regulates pricing conduct, not speech. I'm going to quote from the statute itself, which you didn't really hear from plaintiffs or in the briefing very much. In a sale of goods or services, a seller may not impose a surcharge on a buyer who uses a credit card for an extension of credit instead of cash, a check, or a similar means of payment. And that's all it says. As the Second Circuit explained in the Expressions case, the law necessarily assumes that a seller has a regular base price. Ordinarily, that's the sticker price or the posted price for the good or service. And then the law restricts sellers from charging credit card customers an additional fee above that regular base price that is not also charged to a cash customer. The district court correctly held that the law effectively sets the maximum price for a credit card purchase as the posted price. And that is quintessential pricing regulation. The plaintiff's First Amendment claim revolves entirely around the fact that Texas does not also restrict sellers from providing discounts to cash-paying customers. And they argue that Texas has broadly authorized dual pricing for cash and credit customers and that the state is restricting sellers from communicating that price difference as a surcharge. But Texas has not broadly authorized dual pricing. To the contrary, again, the anti-surcharge law issue here, it restricts sellers from charging credit card customers an additional fee above that regular base price that's not also charged to cash customers. So why is the definition given in Black's Law Dictionary not a legitimate way to read the word surcharge? Well, because a surcharge is the opposite of a discount. But that's not what Black's Dictionary says. Have you read that? Yes. I mean, it is— It's defined as an additional tax charge or cost. It doesn't say—so that would cover both a cash discount or an added cost. I think that the— At the counter. I mean, you can't penalize the credit card holder either way. Well, again, that assumes that there's a regular base price to start with. And that, again, like the Second Circuit held that— How do you read that out of that definition? Because when you say additional, I think it has to start with something. A discount then goes from below that starting point, the base price, and a surcharge goes above it. So, again, not all dual pricing is lawful in Texas. And the First Amendment doesn't require states to treat different pricing practices equally, even if they could be mathematically expressed in the same way. The First Amendment— Has the Texas court interpreted this statute? No, Your Honor. Not to date. But if you look at what the plaintiffs are actually— But as cited in the appellant's brief at 8, supposedly, he cites to the record—I don't see any citation to the authority underlying this statement—at 7-8, where the appellant says, the law does not, however, outlaw dual pricing. To the contrary, as the state's Office of Consumer Credit Commissioner has explained, the statute allows a merchant to, quote, offer a cash customer a discount, close quote, but forbids the imposition of a mathematically equivalent, quote, surcharge on a credit card customer, close quote. What authority is being cited here, this statement that allows a merchant to offer a cash customer a discount? I'm not sure what authority—that's our brief, I'm sorry? No, sir. This is the appellant's brief at page 7, and they cite to the record at 259. I'm not sure off the top of my head what that's referring to, but I can tell you that the state has consistently interpreted the statute to allow for cash discounts, meaning—and as I was trying to explain, that means allowing a seller to offer and provide a rebate, essentially, below the regular base price that's listed when someone pays with cash. And if you look at what the plaintiffs are actually complaining about, they say—and each of them says this in the complaint that's at issue here—the anti-surcharge law is compelling them to set a higher regular base price than they would otherwise prefer to offer if they were allowed to surcharge. And again, that just proves that what the regulation does is it's regulating pricing, because it effectively requires them to build their cost of credit into the regular base price instead of setting it separately from that regular base price, which they'd like to do. That's just quintessential pricing regulation. Now, unlike the Second Circuit Expressions case, every plaintiff in this case simply wants to charge an additional fee above that regular base price to a customer that pays with a credit card. Again, that conduct plainly violates the Texas statute. There's no reason to reach any more difficult statutory construction questions here, because no plaintiff wants to use two separate base prices, you know, a separate regular sticker price for credit and cash. One plaintiff at least wanted to do that in the New York case, but no one wants to do that here. They each just want to tack on an additional surcharge above that regular base price. And for similar reasons, the anti-surcharge law is not void for vagueness, again, because it plainly restricts sellers from imposing and adding additional fees above regular base prices that are not charged to cash customers. Now, whether other hypothetical pricing conduct, which is not at issue in this case, might violate the statute doesn't make it unconstitutionally vague on its face. So I can get now to the questions that the Court asked us to address, and specifically whether the Court should interpret the statute to restrict all forms of dual pricing. And again, we're largely in agreement with plaintiffs on this question. Again, the plain language of the statute restricts only surcharges, not any other form of dual pricing. You disagree with the definition in Black's Law Dictionary, then? I'm not sure I disagree with that. I think I may interpret it differently than Your Honor, that it— It just says an additional charge. It doesn't—you know, to me, it just means you can't charge the credit card customer more than the cash customer. It doesn't speak to how you do that. The State has consistently construed that to mean that it assumes a regular base price. I'm asking you, how can you read it that way? I'm not—I don't really care how you've always done it. Sure. I mean, I guess just knowing that a discount is defined the exact opposite as a surcharge, which is— The statute doesn't do that, though. But the statute doesn't have to specifically allow discounts. I mean, if you don't restrict them, they're presumably allowed. And so, because they're really the opposite form of pricing conduct, the statute can be—like the plain language restricts tacking additional charges above that regular price, but not providing discounts. Well, a lot of states don't agree with that, apparently, because they put the definition of discount in there, too. Well, perhaps they thought it was necessary to make it a little bit more clear, but I think— Maybe they read the definition in Blacks. Possibly so. But, again, the legislative history, like plaintiffs point out, confirms that Texas was basically following up when the federal ban on surcharges expired, Texas and a bunch of other states stepped in to enact it. And federal law has always treated discounts and surcharges differently. Again, the parties here are in agreement. We're not adverse on this state law statutory construction question. And there is the possibility for a preemption problem, not only because there may be a conflict between federal and state law, but there's a federal preemption provision at 15 U.S.C. section 1666J subpart C that may apply. And, again, I'd have to provide further briefing if the Court were interested in hearing about that more. But at bottom, the best reason not to construe the statute to restrict all dual pricing is that if surcharges are actually speech, then restricting discounts and other forms of dual pricing in addition to surcharging wouldn't solve the speech problem. It would still be restricting speech. So the better way to look at this is that the district court was right in the first instance. The statute restricts a specific form of economic conduct. That it allows other forms of economic conduct that may be mathematically similar or a reverse form of the surcharge, it doesn't create a speech problem. And again, with respect to Pullman abstention, for the same reasons that constitutional avoidance doesn't work, our argument is the plain text of the statute only restricts surcharges. Because its history shows that that's all Texas intended to restrict. And it's also not entirely clear how the state law statutory construction question would ever reach a state court. Because again, the parties in this case are not adverse on the state law issue. And in addition, the commission who I represent has exclusive jurisdiction over this provision and there's no private right of action under the surcharge law. At bottom, again, we're talking about pricing conduct. So because the speech clause doesn't protect pricing conduct, restricting additional pricing conduct shouldn't make any difference in the analysis here. And I'll just, if the court has no further questions, I'm prepared to close by saying that the court should just affirm the district court's judgment dismissing all of plaintiff's claims. Okay. Thank you, Mr. Kareem. Back to you, Mr. Gupta. Thank you. This is an interesting appellate argument because I believe that almost every question that the panel has asked, I agree with my colleague from the state about the answer. I want to start by trying to answer the question that you asked, Judge Barksdale, about the citation in our brief, pages 7 through 8. That's in the record at page 259. And what that cites to is a letter from the Office of the Consumer Credit Commissioner to the Attorney General of Texas because the Attorney General of Texas had received a request for an opinion letter about the meaning of the statute. And that opinion letter, I think, is worth reading in full. It's at 258. And let me read you the relevant passage that I think answers your question. The office of, again, this is the office with the authority to construe the statute, said, quote, read together. This is the appellee in this instance. That's right. That's for the recording, not to tell you that. But you know, this is a letter that was produced well before this litigation and it's the consistent position the state has taken throughout and that all the other states have taken. And here's what the state said. Read together, section 33901 of the Texas Finance Code and 15 U.S.C. 1666F stand for the proposition that a merchant may offer a cash customer a discount but may not impose a surcharge on a credit card customer. Expressed another way, if X is the posted price, a merchant may charge a cash customer X minus 1 but may not charge a credit customer X plus 1. And so, you know, that's consistent with our view. And to go to the question that Judge Davis has asked several times about the definition of surcharge, let me suggest that the panel look at 15 U.S.C. 1602Q, which says, quote, the term discount shall not mean a surcharge. So it was understood under the federal law against which this statute was enacted that discount and surcharge were two separate things. And this was a very hard-fought battle in the 1980s. The credit card industry fought very hard once they had lost the battle over dual pricing. Once dual pricing became federal policy, to fight over the label, to fight over what merchants were allowed to call that price difference because of the big difference that that label makes in terms of consumer behavior. And so it was understood throughout that the battle was over the label. And I think if you look at the federal definition, the fact that the Texas statute was enacted against that backdrop and that it's been consistently construed in this way, I think, and my colleague's point about federal preemption, I agree entirely with that. It is not, I don't think there's much to recommend an alternative construction in the name of constitutional avoidance that runs headlong into another constitutional problem.  What's the side of the statute? Sorry? What's the side of the statute? That is 15 U.S.C. 1602Q. And I really do think, you know, because the panel is concerned about these questions and neither side has had the opportunity to brief them, that with your permission, we'd like to submit some supplemental briefing on that question. Okay. We'll consider that and send you, let the clerk send a note on it. Thank you. Okay. Thank you, gentlemen.